UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV01852-SNLJ |
| ) | |
| K. HOVNANIAN AMERICAN ) | |
| MORTGAGE, L.L.C., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Citimortgage's Motion to Dismiss Counterclaims. [Doc. 17]. The matter has been fully briefed and is ready for disposition.

### Background

Plaintiff Citimortgage, Inc. filed suit against defendant K. Hovnanian American Mortgage, L.L.C. ("KHAM") on October 12, 2012. Plaintiff was in the business of purchasing, reselling, and servicing residential mortgage loans on the secondary mortgage market. Defendant was a loan originator and entered into a contractual relationship with the plaintiff wherein defendant sold, and plaintiff purchased, certain residential mortgage loans. The parties' relationship was governed by a contract and various addendums. In its complaint, plaintiff claims that defendant sold it thirteen (13) defective loans and subsequently refused to cure such defects as plaintiff alleges was required by the contract. [Doc. 1]. Plaintiff seeks to recover damages for breach of contract. In the pending motion, plaintiff seeks dismissal of defendant KHAM; three counterclaims which are I. Breach of Contract - Wrongful Termination; II. Conversion, and III. Breach of Contract – Covenant of Good Faith and Fair Dealing.

**Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

**Discussion**

**I.  Count I**

KHAM's first counterclaim is for breach of contract based on CTI's alleged wrongful termination of the parties' agreement. To state a claim for breach of contract, the plaintiff (or, in this case, the counterclaim plaintiff) must identify, *inter alia*, the specific contractual obligations that were breached. *Teets v. American Family Mut. Ins. Co.*, 272 S.W.3d 455, 461 (Mo. Ct. App. 2008); *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 941 (Mo. Ct. App. 1996). In Count I, KHAM's sole reference to this requirement is,

> CMI's wrongful termination was in breach of its contractual obligations to KHAM in that, among other things, CMI sought to impose on KHAM an extracontractual, unbargained-for obligation to accept, without dispute or sufficient investigation, any and all demands that CMI made on it for repurchase or indemnification, irrespective of evidence of liability or damage. It then terminated the parties' Agreement when KHAM refused to accept such a de facto amendment to the parties' Agreement.

From these allegations, it is difficult to ascertain just what CTI's obligations were that KHAM claims were breached. On its face, KHAM's complaint is simply that CTI attempted to impose on KHAM additional contractual obligations, but obviously, mere attempts to amend a contract do not constitute a breach of contract. *Intertel, Inc. v. Sedgwick Claims Management Services, Inc.*, 204 S.W.3d 183, 207 (Mo. Ct. App. 2006). Even if KHAM's allegations were not couched in attempts to amend the agreement, but instead could somehow be viewed as allegations of contractual violations on CTI's part, there still is nothing in the counterclaim that ties in those alleged violations with a specific contractual provision that was allegedly violated. More particularly, although there are in fact detailed provisions in the agreement for termination, both for cause and otherwise, KHAM's counterclaim makes no effort to identify the exact provisions that CTI allegedly violated. In the absence of that identification, Count I is subject to dismissal. *See Agxplore Int'l, LLC v. Shelley*, 1:12cv16SNLJ, 2013 WL 121407, *2 (E.D. Mo. Jan. 9, 2013).

That said, in KHAM's briefing, as opposed to the counterclaim itself, KHAM points to two provisions of the contract --- Section 7, Termination, and Section 11, Cure or Repurchase --- that CTI allegedly breached and that arguably would be grounds for wrongful termination. However, this Court declines to review points set out in briefing though not in the pleading itself. Count I, therefore, will be dismissed, but KHAM is granted 14 days to file an amended counterclaim if it wishes to do so.

## II. Count II

The second counterclaim count --- conversion --- is more clearcut, but even less actionable. Count II states in pertinent part:

> Each time that CMI demanded of KHAM, and allocated to itself, a pair-off fee in connection with purported "failures" by KHAM to meet sales volume commitments, it did so as an indirect and improper means of collecting sums from KHAM that were in good-faith dispute with regard to the 13 loans sold by KHAM

3

> to CMI that are now in dispute under the Agreement, CMI improperly, and without justification, converted KHAM's property to its own use, depriving KHAM of its interest in the property.

CMI challenges this claim because 1) it involves money, not specific chattels, and 2) it is contrary to the economic loss doctrine.

On the first point, "conversion generally is not a proper theory where the claim involves money, as opposed to specific chattel." *Johnson v. GMAC Mortgage Corp.*, 162 S.W.3d 110, 125 (Mo. Ct. App.2005), *quoted in Express Scripts, Inc. v. Walgreen Co.*, No. 4:08-CV-1915-TCM, 2009 WL 4574198, *4 (E.D. Mo. Dec. 3, 2009). Although Missouri law recognizes a "narrow exception" where plaintiff pays a specific amount for a specific purpose but defendant diverts the funds, *id.*, the exception is inapplicable here. KHAM admits that its claim involves the alleged retention of a portion of money CMI allegedly owed KHAM, rather than a specific amount of money paid for a specific purpose and then diverted. Said another way, while in some instances there may be a claim for conversion if the money is a specific amount paid for a specific purpose and is then diverted, there is no claim for conversion where the defendant allegedly retained funds, or, as KHAM describes it in its counterclaim, "allocated to itself" the funds. KHAM cannot recast what amounts to a claim for damages into a claim for conversion.

On the second point, Count II fares no better. The economic loss doctrine bars tort claims where the "substance of [the] claims is for the recovery of losses arising out of the parties' contractual relationships." *Dubinsky v. Mermart*, LLC, No. 4:08-CV-1806-CEJ, 2009 WL 1011503, *6 (E.D. Mo. Apr. 15, 2009) (quoting *Self v. Equilon Enterprises, LLC*, No. 4:00-cv-1903 TIA, 2005 WL 3763533, *11 (E.D.Mo. March 30, 2005)) (alterations in original). Because the substance of KHAM's tort claim for conversion is for the recovery of losses arising out of the parties' contractual relationship, the economic loss doctrine bars the claim. Indeed, KHAM does not even contest the matter. Accordingly, Count II is dismissed.

## III.   Count III

In Count III, also for breach of contract, KHAM alleges that,

> CMI breached its covenant of good faith and fair dealing by, without limitation:   (a) failing to promptly notify KHAM about the applicable defaults, foreclosures, and/or sales of the real property underlying the subject loans; (b) paying an upstream investor when such payment was not required, or paying the upstream investor too much; and (c) failing to first seek to recover any losses from other parties.

Indeed, "Missouri law implies a covenant of good faith and fair dealing in every contract." *Reitz v. Nationstar Mort., LLC*, --- F. Supp. 2d ---, No. 4:12-cv-117 SNLJ, 2013 WL 3282875, *17 (E.D. Mo. June 27, 2013); *Farmers' Elec. Coop. v. Missouri Dept. of Corrections*, 977 S.W.2d 266, 271 (Mo. 1998).   This "good faith" requirement arises pursuant to contract and extends to the manner in which a party exercises discretion conferred by the contract.   *Reitz*, --- F. Supp. 2d at ---, 2013 WL 3282875, at *17.   "A breach of the covenant of good faith and fair dealing occurs where one party 'exercise[s] a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.'" *Id.* (quoting *Cordry v. Vanderbilt Mortgage & Finance, Inc.*, 445 F.3d 1106, 1112 (8th Cir. 2006) (alterations in original).   To establish a violation of the covenant, a plaintiff must show that the defendant's "decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion." *Cordry*, 445 F.3d at 1112.

CMI characterizes KHAM's claim as simply one that CMI failed to mitigate its damages --- that CMI "unnecessarily incurred 'damages' in connection with the 13 'subject loans' and then demanded reimbursement from KHAM." This, CMI maintains, is an affirmative defense rather than an independent cause of action. CMI adds that "KHAM asserts no claim for independent monetary damages outside of its desire to avoid or limit it liability to [CMI] regarding the 13 subject loans."

5

In response, KHAM states that, "There is a fundamental difference between (i) mitigating damage already sustained, and (ii) actually creating 'damages' by making payments for 'political' or business reasons and then demanding 'reimbursement' from KHAM. It is the latter to which KHAM's claim is directed."

Ultimately, a "claim for breach of the implied covenant of good faith and fair dealing is a contractual claim. In order to succeed on a breach of contract, a plaintiff must show the making of a valid enforceable contract between the plaintiff and defendant, the right of the plaintiff and obligation of the defendant under the contract, a violation by the defendant, and damages resulting to the plaintiff from the breach." *Affordable Communities of Missouri v. EF&A Capital Corp.*, No. (E.D. Mo. Jan. 9, 2012) (citing *Hardee's Food Sys., Inc. v. Hallbeck*, 776 F.Supp.2d 949, 952 (E.D.Mo. 2011) and quoting *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 413 (Mo.Ct.App. 2000) (internal citations and quotations omitted). Notably, the covenant cannot give rise to new obligations not otherwise contained in a contract; rather, it "acts merely as a gap filler to deal with circumstances not contemplated by the parties at the time of contracting." *Stone Motor Co. v. General Motors Corp.*, 293 F.3d 456, 466-67 (8th Cir. 2002) (quoting *United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 796 (8th Cir. 2001)). Here, KHAM has not pleaded facts sufficient to support a breach of the implied covenant. KHAM has not linked CMI's alleged behavior (its failure to notify KHAM of defaults, foreclosures, and sales of real property; its payments to upstream investors; its failure to seek recovery of losses from other parties) to any "abuse of discretion" by CMI under the contract. *See Cordy*, 445 F.3d at 1112. Moreover, KHAM does not identify how CTI's demanding additional reimbursement from KHAM supports KHAM's claim for independent monetary damages under this theory.

As with Count I, the Court will dismiss Count III, but KHAM will be permitted 14 days in which to file an amended counterclaim if it wishes to do so.

6

Accordingly,

**IT IS HEREBY ORDERED** that Citimortgage's Motion to Dismiss Counterclaims (#17) is **GRANTED**.

**IT IS FURTHER ORDERED** that KHAM shall have 14 days in which to file an amended counterclaim for Counts I and III.

Dated this __20th__ day of September, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE