# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:12CV01852-SNLJ |
| K. HOVNANIAN AMERICAN MORTGAGE, L.L.C., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff CitiMortgage's Motion to Dismiss Amended Counterclaims (#37). The matter has been fully briefed and is ready for disposition.

## Background

Plaintiff Citimortgage, Inc. ("CMI") filed suit against defendant K. Hovnanian American Mortgage, L.L.C. ("KHAM") on October 12, 2012. Plaintiff was in the business of purchasing, reselling, and servicing residential mortgage loans on the secondary mortgage market. Defendant was a loan originator and entered into a contractual relationship with the plaintiff wherein defendant sold, and plaintiff purchased, certain residential mortgage loans. The parties' relationship was governed by a contract and various addendums. In its complaint, plaintiff claims that defendant sold it thirteen (13) defective loans and subsequently refused to cure such defects as plaintiff alleges was required by the contract. Plaintiff seeks to recover damages for breach of contract.

KHAM counterclaimed, and this Court granted CMI's motion to dismiss the counterclaims. KHAM filed two amended counterclaims for breach of contract — one for Wrongful Termination (Count I) and the other for Breach of Covenant of Good Faith and Fair Dealing (Count II). Those two counterclaims are the subject of CMI's motion to dismiss.

## Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable

inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

## Discussion

I.  **Count I**

KHAM's first counterclaim is for breach of contract based on CMI's alleged wrongful termination of the parties' agreement. The parties' contract contained termination provisions at Section 7. Under that provision, CMI was required to provide KHAM with at least 30 days' notice of termination for any reason than those listed in subsections (1) through (5) of Section 7, thereby affording KHAM a chance to make any necessary business arrangements. (#32 at ¶ 20.) KHAM alleges that CMI breached Section 7 because it failed to provide KHAM with 30 days' notice. KHAM further states that the termination was without cause because it was based solely on CMI's "unilateral and incorrect contention that KHAM was required to acquiesce to CMI's unjustified and insufficiently-documented demands for repurchase and/or indemnification — not any alleged violation of subsections (1) through (5) of Section 7." (*Id.* at ¶ 21.)

Subsections (1) through (5) of Section 7, which provide for immediate termination of the contract, read as follows:

> CMI may immediately terminate this Agreement without notice and CMI then will have no further obligations under this Agreement upon; (1) the failure of Correspondent to perform or abide by any term, condition, covenant or obligation contained in this Agreement or the CMI Manual; (2) the finding by CMI that any representation or warranty made by Correspondent is false or incorrect in any material respect; (3)

3

commencement by or against Correspondent of any bankruptcy, insolvency or similar proceedings; (4) CMI's determination that Correspondent's actions contravene the terms and conditions of this Agreement or could adversely impact CMI's activities or reputation; or (b) the failure of loans sold by Correspondent to CMI pursuant to this Agreement to satisfy CMI's expectations regarding loan quality and/or performance.

The remainder of Section 7 articulates the procedure for terminating the contract without cause:

> Either party may terminate this Agreement for any other reason upon thirty (30) calendar days prior notice to the other. In the event of termination, Correspondent shall fully cooperate with and assist CMI in obtaining the documentation necessary to complete the processing and full resolution of all matters (including but not limited to the delivery of all application and/or closed loan documents and, if applicable, all Loan insuring documentation) relating to all Loans purchased by CMI.

KHAM claims that CMI's immediate termination of the contract was without cause and thus in violation of Section 7.

KHAM also claims that CMI breached Section 11 ("Cure or Repurchase") of the contract. That section sets forth the procedure required if CMI, "in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement" suffered from an enumerated defect. KHAM states that CMI failed to provide KHAM with any opportunity to correct or cure alleged loan defects.

KHAM states that it was harmed because it was forced to "scramble[] to line up a replacement purchaser for loans ready to be sold," and that it "lost market share, lost the benefits of competitive pricing, and lost needed capital for business operations, among other things."

To state a claim for breach of contract, the plaintiff must identify, *inter alia*, the specific contractual obligations that were breached. *Teets v. American Family Mut. Ins. Co.*, 272 S.W.3d 455, 461 (Mo. App. E.D. 2008); *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 941 (Mo. App. E.D. 1996). Here, KHAM articulates that CMI breached Sections 7 and 11. CMI contends that the count must be dismissed because KHAM's pleading reveals that there was no breach.

As to breach of Section 7, KHAM states that CMI terminated the contract without cause and failed to give the required 30 days notice. But the contract states that immediate termination was available to CMI under certain circumstances, including "the finding *by CMI* that any representation or warranty made by [KHAM] is false or incorrect in any material respect" (emphasis added). Here, KHAM itself pleads that CMI believed each loan suffered from "breaches of representations and warranties made by KHAM." (#32 at ¶ 9.) Thus, KHAM's counterclaim suffers from a contradiction that is fatal to Count I. KHAM seems to suggest that CMI's interpretation of the contract is draconian; however, the contract is clear that CMI has nearly unfettered discretion with respect to many aspects of the parties' relationship. For example, CMI "may purchase" mortgages from KHAM, but CMI was not required to purchase mortgages. The termination clause was similarly unilateral — only CMI had the contractual ability to immediately terminate the contract. Indeed, the contract provided CMI "may immediately terminate" the contract — without notice — if it determined that KHAM breached any representations or

5

warranties with respect to the loans. KHAM's counterclaim pleads that CMI had made such a determination. The contract therefore allowed CMI to terminate the contract immediately. The wrongful termination claim based upon Section 7 therefore fails.

Next, KHAM claims that CMI breached Section 11 when CMI terminated the agreement before allowing KHAM to "correct or cure" the defects in the subject loans. Again, that section states that "If CMI, in its sole and exclusive discretion, determines any Loan ...[was defective in a number of enumerated ways, KHAM] will ....correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI." The Section goes on to state that if KHAM cannot correct or cure the defect, then KHAM must repurchase the loan.

KHAM concedes that CMI notified it of loan defects. KHAM also concedes that it did not attempt to correct or cure — rather, KHAM states that it "believed...CMI's claims were unjustified and deficient" and/or that CMI needed to provide more information. (#35 at ¶¶ 10-11.) Then, KHAM states that CMI "terminated its business relationship with KHAM....[because] KHAM refused, in good faith, to acquiesce to CMI's improper and unsupported demands for 'repurchase' or 'indemnification.'" (*Id.* at ¶ 14.)

CMI explains that the contract required KHAM to correct or cure or face demand for repurchase. That is, indeed, what Section 11 states. The contract is explicit that CMI has "sole and exclusive discretion." KHAM asks the Court to disregard CMI's "unworkable and extraordinary interpretation of the Agreement." (#41 at 9.) But the

6

contract and KHAM's own pleadings — which concede the above facts — are dispositive. The contract was undoubtedly written in CMI's favor (in exchange for which KHAM received a lucrative business relationship with sales amounting to over $2.135 billion), and KHAM must accept the consequences of the contract into which it entered. KHAM suggests CMI made unfair demands under the contract, but CMI's discretion was of course, as CMI itself states, "cabined in by an implied duty of good faith." (#44 at 3 n.1.) Notably, KHAM does not allege that CMI's initial finding of defects in the loan warranties was in bad faith. Rather, KHAM's second count, breach of the covenant of good faith and fair dealing, is based on other matters, as discussed below.

### III. Count II

"Missouri law implies a covenant of good faith and fair dealing in every contract." *Reitz v. Nationstar Mort., LLC*, 954 F. Supp. 2d 870, 891 (E.D. Mo. 2013); *Farmers' Elec. Coop. v. Missouri Dept. of Corrections*, 977 S.W.2d 266, 271 (Mo. 1998). This "good faith" requirement arises pursuant to contract and extends to the manner in which a party exercises discretion conferred by the contract. *Reitz*, 954 F. Supp. 2d at 891. "A breach of the covenant of good faith and fair dealing occurs where one party 'exercise[s] a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny [the other party] the expected benefit of the contract.'" *Id.* (quoting *Cordry v. Vanderbilt Mortgage & Finance, Inc.*, 445 F.3d 1106, 1112 (8th Cir. 2006) (alterations in original). To establish a violation of the covenant, a

7

plaintiff must show that the defendant's "decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion." *Cordry*, 445 F.3d at 1112.

CMI contends that this claim should be dismissed because it merely restates the affirmative defense of the same name. It is worth noting at this point, however, that CMI has initiated litigation with numerous "correspondent lenders" based on facts and contracts similar to those alleged here. (Indeed, the contract itself suggests it was used over and over again with various lenders because it is a form with KHAM's name and the date handwritten into the appropriate blanks. (*See, e.g.*, #32-1 at 1.)) CMI litigated a similar contract under similar circumstances with another lender, and that defendant's counterclaim for breach of the implied covenant of good faith and fair dealing was upheld by this Court. *CitiMortgage, Inc. v. Mason Dixon Funding, Inc.*, 4:09CV1997 TCM, 2011 WL 1344031, *4 (E.D. Mo. Apr. 8, 2011).[1]

CMI urges this Court not to heed *Mason Dixon* and instead to look to another line of other cases that also interpret "essentially the same contract" as at issue here. (#44 at 7, citing *CitiMortgage, Inc. v. Just Mortg., Inc.*, No. 4:09-CV-1909-DDN; 2012 WL 1060122, *15 (E.D. Mo. March 29, 2012); *CitiMortgage, Inc. v. Allied Mortg. Group,*

---

[1] In that case, however, CMI based its argument not on the fact that the breach of covenant was stated as both an affirmative defense and counterclaim. Rather, CMI argued that the lender defendant could not plead breach of the covenant of good faith and fair dealing based on conduct where the alleged breacher is merely acting in accordance with the terms of the contract. *Mason Dixon*, 2011 WL 1344031, at *2. The Court there noted that CMI's argue was based on an over-simplification of the counterclaim and denied the motion. *Id.* at n.8.

*Inc.*, No. 4:10-CV-1863-JAR, 2012 WL 5258745, *8 (E.D. Mo. Oct. 24, 2012); *CitiMortgage, Inc. v. Reunion Mort., Inc.*, No. 4:10-CV-16332-RWS, 2012 WL 5471165, *8 (E.D. Mo. Nov. 9, 2012). Each of the opinions to which CMI cites, however, pertains to a motion for summary judgment — not a motion to dismiss. As for *CitiMortgage, Inc. v. First Cal. Mortg. Co.*, No. 4:10-CV-1498-RWS, Dkt. No. 70 (E.D. Mo. Nov. 29, 2011), also cited by CMI, that order pertains to a motion to compel discovery related to the defendant's implied covenant affirmative defense. None of those authorities is persuasive. CMI's reliance on *AmWest Sur. Ins. Co. v. Concord Bank*, No. 4:00cv1988-SNL, 2003 WL 553229 (E.D. Mo. Feb. 4, 2003) is similarly unavailing because it dismisses a counterclaim for declaratory judgment that was identical to claim made by the original complaint. Although the above-cited caselaw may suggest that KHAM has an uphill battle ahead of it, the breach of the covenant of good faith and fair dealing claim is not per se dismissible on the basis that it bears the same name as the affirmative defense.[2] *See, e.g.*, *Newco Atlas, Inc. v. Park Range Const. Inc.*, 272 S.W.3d 886, 894-96 (Mo. App. W.D. 2008) (addressing separately defendant's affirmative defense of and counterclaim for breach of covenant of good faith and fair dealing); *see also Mason Dixon*, 2011 WL 1344031, at *1.

---

[2]The Court observes that the affirmative defense *defends* against CMI's claim that KHAM breached the parties' Agreement, but the claim is based on the fact that CMI itself allegedly breached the Agreement, which allegedly resulted in damages to KHAM.

Next, CMI contends that its exercise of the discretion granted to it by the Agreement cannot show bad faith, and, furthermore, that KHAM fails to allege any facts linking CMI's alleged behavior in demanding repurchase of the loans to any abuse of discretion or bad faith. In fact, KHAM alleges that its counterclaim is based on five abuses of discretion by CMI. Each is discussed in turn below.

**1. By wrongfully demanding repurchase of the subject loans without establishing the prerequisites for repurchase as set forth in Section 11.** The Court observes that KHAM does not identify any such prerequisites. Section 11 states that CMI has "sole and exclusive discretion," and KHAM does not identify any prerequisites to that exercise of discretion.

**2. By failing to afford KHAM the opportunity to correct or cure.** KHAM admits that it did not attempt to correct or cure, and it does not explain what it means by "opportunity" — Section 11 does state that KHAM will "correct or cure such defect within the time prescribed by CMI," but KHAM does not suggest that CMI did not give it enough time. Moreover, KHAM does not explain how it could have cured or corrected the defects if it had been afforded an "opportunity."

**3. By failing to timely notify KHAM of defaults, foreclosures, and/or sales of the real property underlying the loans prior to demanding repurchase.** First, KHAM does not explain how this behavior exemplifies bad faith — particularly where the contract does not appear to put any time limit (or any other limitation) on when CMI

may demand cure or correction. Again, KHAM does not suggest that the 13 loans at the heart of this disagreement were in fact not defective.

**4. By paying upstream investors when such payments were not truly required or by paying upstream investors too much, and then wrongfully demanding reimbursement.** CMI was entitled to determine whether it was required to repurchase loans it had sold to secondary market investors — the contract is explicit as to that. However, in this Court's understanding of KHAM's pleading, KHAM alleges that CMI abused its discretion when it determined that it had to pay upstream investors like Fannie Mae because — apparently — the foreclosed properties had been sold such that the loan amounts were covered by the sale. Thus, KHAM appears to assert that upstream investors like Fannie Mae were paid twice — once by the foreclosure sale, and again by CMI. KHAM alleges that CMI made such payments to upstream investors in order to curry favor with those influential investors, not because the upstream investors actually required payments. That exercise of discretion may therefore be plausibly read as having been made in bad faith because it evaded the spirit of the contract.

**5. By failing to first seek to recover losses from other parties.** CMI had the right under the contract to seek cure or correction from KHAM, followed by demands for repurchase. Nothing about the contract suggests it was in "bad faith" for CMI not pursue a gang of unknown, downstream parties. CMI had a *contract* with KHAM that gave CMI discretion to pay its upstream investor.

11

Thus, as this Court's understands KHAM's pleading, KHAM sufficiently alleges an abuse of discretion sufficient to support its claim for breach of the implied covenant. Further, KHAM alleges that CMI's breach caused KHAM to incur damages such as lost market share and damage to reputation, among other things. As for CMI's suggestion that it could not have abused its discretion when exercising its express rights under a contract, that argument was essentially rejected in *Mason Dixon*. In that case, the Court observed that "when a party provides a single party with discretion, that discretion is not unlimited; it must not be exercised to deprive the other party of the benefit of the contractual relationship or evade the spirit of the bargain." 2011 WL 1344031, at *3 (quoting *City of St. Joseph, Mo. v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 370 (Mo. App. W.D. 2008)). Thus, the Court noted that "discretion was constrained by the covenant," and it declined to dismiss a counterclaim for breach of the covenant of good faith and fair dealing. *Id.* at *4.

The Court concludes that the facts pleaded in support of Count II demonstrate that the claim is "facially plausible," *Cole*, 599 F.3d at 861, to the limited extent set out above, and thus the Court will deny the motion to dismiss as to Count II.

Accordingly,

**IT IS HEREBY ORDERED** that CitiMortgage's Motion to Dismiss Amended Counterclaims (#37) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Count I of KHAM's Amended Counterclaim is **DISMISSED**.

Dated this   26th   day of March, 2014.

                                              STEPHEN N. LIMBAUGH, JR.
                                              UNITED STATES DISTRICT JUDGE